CLERKS OFFICE U.S. DIST. COURT
AT ABINGDON, VA
FILED
November 25, 2026
LAURA A. AUSTIN, CLERK
BY: s/ FELICIA CLARK
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ABINGDON DIVISION**

| | | |
|---|---|---|
| **FULTON UNITED METHODIST CHURCH, and FULTON COMMUNTIY CHURCH,** | ) | |
| Plaintiffs, | ) | Case No. 1:26CV00047 |
| v. | ) | **OPINION AND ORDER** |
| **HOLSTON ANNUAL CONFERENCE OF THE UNITED METHODIST CHURCH, INC.,** | ) | JUDGE JAMES P. JONES |
| Defendant. | ) | |

*Daniel P. Dalton, DALTON & TOMICH, PLC, Detroit, Michigan, and Kristin B. Johnson, WOODS ROGERS VANDEVENTER BLACK, PLC, Roanoke, Virginia, for Plaintiff; Jason G. Moyers, HARMAN, CLAYTOR, CORRIGAN, & WELLMAN, Roanoke, Virginia for Defendant.*

A local Methodist church congregation sues the governing body of its denomination on the ground that the governing body fraudulently prevented the local church from leaving the denomination. The plaintiff congregation contends that for this reason it is entitled to the church property free of any claim by the governing body. The governing body has moved to dismiss the Complaint, primarily on the ground that the Ecclesiastical Abstention Doctrine precludes subject-matter jurisdiction of this court. I find, based on the allegations of the Complaint, that the

Doctrine is not a bar to the court's resolution of this dispute since it may do so by employing neutral principles of Virginia law.

I.

In this action arising under general diversity jurisdiction, the plaintiffs, Fulton United Methodist Church and Fulton Community Church (collectively, FUMC), assert fraud claims against the defendant, Holston Annual Conference of the United Methodist Church, Inc. (the Conference). In Counts I and II, FUMC claims actual and constructive fraud, respectively. In the remaining Count III, FUMC asks that the court confirm its title to church property free of any claim by the Conference. The Conference has moved to dismiss the Complaint for lack of subject-matter jurisdiction, Fed. R. Civ. P. 12(b)(1), relying on the Ecclesiastical Abstention Doctrine. It has also moved to dismiss Counts I and II for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Because the Ecclesiastical Abstention Doctrine does not apply under the circumstances and because FUMC has alleged sufficient facts to support its fraud claims, I will deny the Motion to Dismiss.

II.

The Complaint alleges the following facts, which I must accept as true at this stage for the purpose of deciding the Motion to Dismiss.

FUMC is a church congregation in Smyth County, Virginia, and the Conference is the regional Methodist governing body. FUMC sought to disaffiliate from the Conference due to a conflict on issues related to human sexuality. *The Book of Discipline*, the United Methodist Church's official book of law, doctrine, and organizational structure, previously set forth a process for disaffiliation by local congregations. The process had a "sunset date" of December 31, 2023. Compl. 4–5, Dkt. No. 1.

FUMC informed the Conference of its intent to disaffiliate in March 2022. Daniel Dishon, who was both FUMC's pastor and an agent of the Conference, communicated this intent to the Conference. Pastor Dishon advised the congregation to "hold off" on disaffiliating, falsely stated that the congregation could disaffiliate and retain its property at any time, and said that the Conference was "working on" the disaffiliation process. *Id.* at 5. The Conference later informed FUMC that it needed to go through a period of discernment for three months before voting to disaffiliate. FUMC complied, and the congregation unanimously voted for disaffiliation in August 2022.

After this vote, members of the Conference made false statements and withheld needed information to the plaintiffs about the disaffiliation process. Pastor Dishon provided disaffiliation packets to other congregations while withholding packets from FUMC and failed to inform FUMC of the deadline for seeking

disaffiliation. FUMC also claims that District Superintendent Kim Goddard, an agent of the Conference, falsely stated that FUMC would be required as a condition of disaffiliation to pay over $8,000 in pension liability.

In 2024, the Conference informed FUMC that it could disaffiliate through an alternative process. However, that process was later invalidated by the United Methodist Church Judicial Council before FUMC could take advantage of it. In August 2025, the FUMC congregation voted to transfer all interests in the church property to a new entity, Fulton Community Church, a nonstock corporation. The local Virginia circuit court approved this conveyance at the request of FUMC, although FUMC expects the Conference to assert a cloud upon the title.

III.

A Rule 12(b)(1) motion challenges the court's authority to proceed with a case, raising a jurisdictional bar.[1] *Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 649 (4th Cir. 2018). A defendant may challenge subject-matter jurisdiction in one of two ways. First, a defendant may contend "that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based."

[1] "While neither the Supreme Court, nor the Fourth Circuit, has provided explicit guidance as to whether the ecclesiastical abstention doctrine constitutes a Rule 12(b)(1) jurisdictional bar, as opposed to a Rule 12(b)(6) affirmative defense, most courts have viewed the ecclesiastical abstention doctrine through a 12(b)(1) lens." *Jurisdiction of the Armed Forces & Chaplaincy v. Anglican Church in N. Am.*, No. 2:25-CV-12848-BHH, 2026 WL 3407176, at *2 (D.S.C. Sept. 28, 2026), *appeal docketed*, No. 26-2438 (4th Cir. Oct. 9, 2026).

*Kerns ex rel. Estate of Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted). When a defendant makes a facial challenge, as here, "the plaintiff, in effect, is afforded the same procedural protection as [it] would receive under a Rule 12(b)(6) consideration." *Id.* (citation omitted). Second, the defendant may argue "that the jurisdictional allegations of the complaint [are] not true." *Id.* (citation omitted). In this situation, "[t]he plaintiff . . . is afforded less procedural protection" and "[a] trial court may then go beyond the allegations of the complaint and . . . determine if there are facts to support the jurisdictional allegations." *Id.* (citation omitted). Because the defendants have made a facial challenge in this present motion, I must accept the facts alleged by the plaintiffs as true and deny the motion if the Complaint alleges sufficient facts at this point to invoke subject-matter jurisdiction.

Generally, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Further, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "While legal conclusions can provide the

framework of a complaint, they must be supported by factual allegations." *Id.* at 679. Although a complaint need not contain detailed factual allegations, it must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

IV.

A.

The elements of fraud are: (1) false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled. *Winn. v. Aleda Const. Co.,* 315 S.E.2d 193, 195 (Va. 1984). Constructive fraud includes the same elements except that the representation was made "innocently or negligently." *Prospect Dev. Co. v. Bershader*, 515 S.E.2d 291, 297 (Va. 1999) (internal quotation marks and citations omitted). I find that the Complaint sufficiently alleges facts asserting all of the required elements of actual and constructive fraud, Counts I and II. Based on proof of such fraud, FUMC plausibly claims that it can obtain clear title to its property as sought in Count III.

B.

"[T]he First Amendment severely circumscribes the role that civil courts may play in resolving church property disputes. It is obvious, however, that not every civil court decision as to property claimed by a religious organization jeopardizes

values protected by the First Amendment. Civil courts do not inhibit free exercise of religion merely by opening their doors to disputes involving church property." *Presbyterian Church in the United States v. Mary Elizabeth Blue Hull Mem'l Presbyterian Church*, 393 U.S. 440, 449 (1969). States take different approaches to the Ecclesiastical Abstention Doctrine in cases involving church property disputes. Some states take a hierarchical-deference approach, meaning that those courts must defer to the decisions of the highest body in a hierarchical church. W. Cole Durham & Robert Smith, *Religious Organizations and the Law* § 5:18 (2d ed. updated 2025). However, Virginia takes a different, and more modern approach, referred to as the neutral-principles-of-law category. Jeffrey B. Hassler, *A Multitude of Sins? Constitutional Standards for Legal Resolution of Church Property Disputes in a Time of Escalating Intradenominational Strife*, 35 Pepp. L. Rev. 399, 457 (2008) (categorizing the approach of each state); *see Reid v. Gholson*, 327 S.E.2d 107, 112 (Va. 1985) ("The question is simply whether the court can decide the case by reference to neutral principles of law, without reference to issues of faith and doctrine.").

The fraud claims asserted here do not appear to be bound up in any religious doctrine. FUMC merely hopes to prove that certain church officials made material false statements or withheld material information related to disaffiliation. I find that it is not apparent on the present record that the evidence will involve the court in

questions of religious doctrine or practice. Civil courts are not necessarily prohibited from looking to church documents as part of a neutral-principles analysis. *Jones v. Wolf*, 443 U.S. 595, 601 (1979) (holding that a neutral-principles approach may involve the analysis of church documents concerning the ownership and control of property).

The Conference has submitted a recent decision of the Supreme Court of Appeals of West Virginia, *State ex rel. Trustees of the W. Va. Conf. of the United Methodist Church v. Wills,* No. 26-198, 2026 WL 3334074 (W. Va. Nov. 4, 2026), as persuasive authority in its favor. But that case involved the application of West Virginia law, using the hierarchical-deference approach.

There is also an important factual difference between this case and *State ex rel. Trustees v. Wills*. The plaintiff there claimed that church officials perpetuated fraud by incorrectly interpreting the relevant provision of *The Book of Discipline*. Here, FUMC alleges the Conference wrongfully delayed disaffiliation until it would no longer be possible. FUMC does not claim that the Conference, through its agents, committed fraud based on their interpretation of church law or rules.

C.

At the hearing on the present motion, the Conference advised that it had recently filed a case in the Circuit Court of Smyth County covering the same issues as this action and urged that as a reason for this court to exercise its discretion to

decline to hear this case. But no legal doctrine compels that result. Neither the *Rooker-Feldman* nor the *Younger* abstention doctrines apply here. The *Rooker-Feldman* doctrine applies to state-court losers who seek a judgment from a federal district court to serve as essentially an appeal of a state court decision. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291–92 (2005). The *Younger* doctrine compels federal courts to abstain only when the ongoing proceeding is: (1) a state criminal prosecution, (2) a civil enforcement proceeding, or (3) a civil proceeding involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions. *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 73 (2013).

That a state court has a similar case does not compel a federal district court to abstain from deciding its own case. In fact, a federal court in this situation may only dismiss such a case in "exceptional circumstances." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976) (internal quotation marks and citation omitted). The following factors may indicate such exceptional circumstances exist: the inconvenience of the federal forum, the desirability of avoiding piecemeal litigation, and the order in which jurisdiction was obtained by the concurrent forums. *Id.* at 818. The Conference has not claimed that the forum is inconvenient or that the adjudication of this case and the state case will result in piecemeal litigation. Moreover, the fact that this case was filed before the state court

case mitigates against abstention. *Id.* The Conference has not provided a clear reason for dismissal in a situation where "[o]nly the clearest of justifications will warrant dismissal." *Id.* at 819.

V.

For the foregoing reasons, it is **ORDERED** that the Motion to Dismiss, Dkt. No. 14, is DENIED.

ENTER: November 25, 2026

/s/ JAMES P. JONES
Senior United States District Judge